We're going to start off with United States v. Thompson, and we have, joining us from a far-off land, Pittsburgh, Pennsylvania, Ms. Freeland, can you hear us? Yes, Judge. All right, fabulous. Ms. Freeland's here for the appellant, and Ms. Heywood? Yes, Your Honor. All right. Ms. Freeland, we'll hear you. Thank you, Judge Greenaway. I'd like to reserve three minutes for rebuttal since I'm not there in person. I wasn't able to do that with the court crier in advance. No worries. That is granted. You may proceed. And I also cannot see my light, so I'll be relying on you to tell me when my time is up. I have no worries about that. Okay. Thank you. You will be immediately informed. All right. Well, thank you very much. And may it please the court, my name is Lisa Freeland, and I'm here today on behalf of Colbert Thompson. Your Honors, a majority of the justices in Freeman v. United States adopted a view of eligibility under 18 U.S.C. 3582c2, which requires reconsideration of this court's analysis in United States v. Matteo. There are two critical points from the decision in Freeman that require this reconsideration. The first is that the Freeman plurality, together with Justice Sotomayor, who concurred, interpreted 3582c as having two distinct conditions for eligibility. First, that the sentence imposed be based on an amended guideline, and second, that the amendment have the effect of lowering the applicable guideline range. This court in Matteo, however, conflated those two conditions and found, and I quote, if an amended guideline does not have the effect of lowering the sentencing range actually used at sentencing, the defendant's sentence was not based on that range within the intendment of the statute. This is out of line. If you are imposing a career offender sentence and you have made that decision, don't you then start from the statutory maximum penalty provided under law for the offense? No, Your Honor. Under USSG 1B1.1a and 1B1.1 really in its entirety, the starting point is always with the applicable guideline, which is defined as the offense level guideline, in this case 2DC.1. That's always the starting point under the guidelines. In the ultimate calculation, once you have decided that you are dealing with a career offender, you do not return to the guideline. Don't you go directly to the maximum statutory penalty? Yes, Your Honor. The second point I was going to make about the problem with the Matteo decision is that the Matteo decision cut right to that chase, if you will, and it said that the end result of the overall guideline calculus, not the series of tentative results reached at the various interim steps in performance, are all that was relevant. Under Freeman, both the concurrence and the plurality took a different view. The plurality said, and I quote, the court is to isolate whatever marginal effect the since-rejected guidelines had on the defended sentence. Justice Sotomayor said that in applying 3582C, a court must discern the foundation for the term of imprisonment. Under both of those renditions... That's important. Excuse me, but when you say foundation, isn't the foundation for this sentence, I mean the career guidelines? It's not the offense guideline, isn't it? Well, Your Honor... In other words, even if you assume that whether or not the statute applies turns on the interpretation of the word foundation, doesn't it make more sense to see it here, the foundation is that he's a career offender? Well, Your Honor, I don't agree under Freeman, and I think that that's the... It's analogous to the view that was taken by the dissent in Freeman, that under an 11C1C plea, the basis or foundation is the plea agreement itself. But the concurring opinion and the plurality in Freeman took a different view, and that is... And I think some of the pertinent language from the plurality's opinion that really spells it out best is that once you work backwards from the purpose of looking at the foundation or the basis or the starting point, that's the language that the plurality and the concurrence use, the court should be able to revisit a prior sentence to whatever extent the range in question... The amended guideline was a relevant part of the analytic framework the judge used to determine the sentence or approve the agreement. And even though the end result of the guideline calculus took you to the career offender guideline range, and from that range, the sentence ultimately imposed was imposed, there were many steps, beginning with those in 1B1.A, that determined what the analytical framework for reaching that ultimate range was. I also want to point out that in this case, there was a request made by defense counsel at sentencing for a departure under guideline section 4A1.3. That request was, of course, denied, and Mr. Thompson was ultimately sentenced as a career offender. But in the court's very consideration of what sentence to impose, the court was confronted with specific arguments about the crack guideline, the difference between the crack guideline and the career offender guideline. And although the court ultimately decided to go with the career offender guideline, it's very difficult to see how you could eliminate the crack guideline and its significance to the overall sentencing in this case in the same way that Justice Sotomayor, in the plurality in Freeman, said that it's very difficult, even in an 11C1C plea case, to eliminate the guidelines from the equation, even though once the district court accepts that plea, he or she is bound to impose the sentence embodied therein. Well, why isn't the issue that Freeman uses based on language and Matteo, the statutory language, is based on a sentencing range? If you're looking at those two, aren't they distinct?  Well, Your Honor, I don't think it does. Because actually in Matteo, what the court did was it looked to the language following the phrase based on, that being sentencing range, to aid it in its interpretation of what based on meant. And the ultimate decision in Matteo was that a sentence is only based on the amended guideline if that guideline has the effect of lowering the defendant's sentence. And that is just simply in conflict with the decisions of both the plurality and the concurrence in Freeman. The court in Matteo conflated the two conditions for eligibility, whereas the court in Freeman separated them, analyzed them distinctly, and most importantly, with respect to the based on condition, it reached a completely different view of what based on meant. There is no way to reconcile the Freeman definition of based on and the Matteo definition of based on. Isn't there a valid distinction between Freeman and this case, the career offender case? Because once you are dealing with a recidivist, once you are dealing with someone who has been in the criminal justice system and come back and done the same thing all over again, the career offender is supposed to take the recidivist and with that acknowledgement put the recidivist away where he or she will not be tempted in the future for long periods of time. And therefore the length of the sentence imposed on a career offender is imposed because of this element of recidivism rather than because of the crack cocaine basis that you find in Freeman. Well, Your Honor, I don't think so. I mean, I would have to agree with you that there's a distinction, but I believe that it's a distinction without a meaning in the context of this case, and I'll explain why. As you know, and as was present in this case, the career offender, once somebody is deemed a career offender, that's not the end of the story. Even before when Mr. Colbert Thompson was sentenced in 2002 prior to the Supreme Court's decision in Booker, there were opportunities under Chapter 4 of the guidelines for departures from the career offender range. And so once a determination has been made that an individual's recidivist past requires that person to be deemed a career offender, that's not the end of the story. Many people in my district in particular, in the Western District of Pennsylvania, traditionally departures under 4A1.3 have been overwhelmingly granted, and I believe one of the highest districts in the country in granting 4A1.3 departures. I know that one wasn't granted in this case, but the distinction that you're making about whether the length of the term of prison is really set in stone once someone is determined to be a recidivist, I would disagree with that principle. And I also would go back to Freeman and say that the same types of arguments were made by the dissent in that case in trying to prevail on the rest of the court, that it was the sentencing, the plea agreement, that really it was the end of the story, if you will, with the sentence. And just as the career offender designation is not the end of the story in this case, the plea agreement under C1C was not the end of the story in Freeman. And so I think that Freeman does, although it's a little bit off point, does provide some guidance in responding to Your Honor's question. The departures that you were just alluding to, were those cases involving career offenders as well? The 4A1.3 departures, yes, Your Honor. It's the departure available once somebody has been designated as a career offender for overrepresentation. And by the time Mr. Thompson was sentenced in 2002, this court had already decided SHOOP1, SHOOP2, and SHOOP3, making very clear the standards governing those departures, their availability. And in fact, in my district, they were quite frequently availed. No, I meant 706 as it related to the career offender status. You weren't saying that that… I'm sorry. I misunderstood your question. You weren't saying that that distinction was drawn, right? That in these prior cases where there were career offenders, that they also had 706 departures. No, no, no, Your Honor. No, no, no. I'm sorry. I misunderstood your question. That wasn't the point I was trying to make. The point I was really trying to make was that in response to Judge Roth's question, that designation as a career offender is by no means the end of the story, just as in Freeman, the fact that the case involves a C1C plea agreement is not the end of the story when the guidelines and their framework for shaping a sentence are involved as they were in this case. I do want to address a couple of points from the government's brief. Did you have a question, Judge Greenaway? Well, your red light's up. I was going to ask… Oh, my goodness. I wonder if they have any other questions at the moment. Well… I'd be happy to hear the short point that Ms. Freeland has to make. Absolutely. Okay. I mean, and I'll leave it at that, and then I'll wait for my rebuttal. But the cases that are cited in the government's brief, there's focus on whether the concurring opinion or whether the plurality opinion in Freeman controls, and it cites cases from several circuits around the country that have found that the concurring opinion of Justice Sotomayor is the controlling opinion. I just wanted to note that all of those cases are C1C plea cases, which really rely on Justice Sotomayor's more narrow view of how to deal with the guidelines in a C1C plea case. But I wanted to remind the court that there is another rule that binds courts, and that is that when an opinion issues for the court, it's not only the result that the court reaches, but also those portions of the opinion necessary to that result that are also binding. And in my opinion, and what I would suggest to this court, the definition of the phrase based on, given by the plurality and the concurrence, are also binding on this court and have more general application outside of the C plea case context, where Judge Sotomayor's concurring opinion may very well constitute the binding rule of the court. Let me ask for some clarification. Certainly. Do you agree or not agree that, well, first of all, you seem to agree that Justice Sotomayor's opinion is narrower than the plurality. So that being the case, do you agree that it's her opinion that controls? Well, Your Honor, I believe that her ultimate result in the C plea context is a narrower opinion and would control in those cases. But the point I'm trying to make is that underlying that final result are other steps in the analysis which are also binding, particularly the definition of based on. And when you look at the definition of based on, there is substantial consistency between the plurality and the concurring opinion, and that the rule flows from both of those opinions. And I would direct the court's attention to the Second Circuit's opinion in United States versus Rivera, the only case to apply Freeman outside of the C plea context, wherein the language from the plurality and the concurrence with respect to the definition of based on. All right. Thank you. We'll hear from you on rebuttal. Thank you, Judge. Ms. Haywood, good morning. Good morning. May it please the court. Rebecca Haywood from the United States Attorney's Office here on behalf of the government. The government recognizes that the purpose of the crack cocaine amendments was to correct an inequity that existed. But the problem with Mr. Thompson's argument is he was not sentenced as an ordinary crack cocaine offender. He was designated and sentenced as a career offender. And because of that, he's not entitled to take advantage of the amendments to the crack cocaine guidelines. Now, I want to address the Freeman decision. This court in Mateo actually specifically held that career offenders are not entitled to take advantage of the specific amendment that's at issue here. And the entire argument here is that the Supreme Court's decision in Freeman basically implicitly overruled Mateo, and that's simply not correct. With all due respect to Ms. Freeland, I completely disagree with her analysis. The concurring opinion of Justice Sotomayor controls. In that concurring opinion, Justice Sotomayor specifically disagreed with the plurality statement. She specifically stated, I cannot endorse the plurality suggestion that Section 3582C2 should be understood to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytical framework. And that is basically essentially the entire basis of the argument that's been presented here. And Justice Sotomayor specifically and expressly rejected that proposition. And I would also take issue with another thing that Ms. Freeland stated, which is that Justice Sotomayor said that the analysis was based on the guidelines. It was not. Justice Sotomayor's opinion was based on her assertion that the parties had agreed, as part of an 11C1C, to look to a specific sentencing range. And because of that, she found that the intent of the parties should control, and if there was an amendment to that sentencing range, that the defendant in that case had bargained for it and should get the benefit of that. It was not based on an analysis of the guidelines itself. It flowed from the agreement itself. And I want to go back to this Court's decision in Mateo. Mateo did not conflate the distinction in 3582C2 that sets forth a two-part test. Well, Justice Sotomayor, I think, does agree that if the plea agreement refers to another guideline range, then the statute would apply, right? That's correct. All right, now, so if a plea agreement, I guess a C-type agreement, you know, could theoretically be based on a guideline range in the sense that it says, you know, well, expressly says so, then if you transfer that to the career offender guidelines, doesn't the career offender guidelines specifically refer to the crack guidelines? Well, it may refer, but the question is the ultimate, the end result. So basically the end result in the C agreement is, you know, whatever is agreed to. Correct, but the end result here was the career offender range. I know that, but whatever is agreed to could be derived from a guideline range. And in that case, Justice Sotomayor seemed to recognize that then the amendment would apply. Right, but if you apply that in this circumstance, as well as the point that there can only be one applicable guideline range, which, I mean, and we're talking about two parts of a test here, too. I first want to separate them. The Supreme Court in Freeman was dealing with the first part of Section 3582, which deals with whether a sentence is based on a sentencing range. There's also a second part to that, which is that the sentence is, that the amendment has the effect of lowering the applicable guideline range. And Ms. Freeland has stated that this Court in Mateo conflated that distinction. This Court did no such thing. Both requirements have to be met. Freeman dealt with the first requirement, which is whether a sentence is based on a sentencing range. And I still would submit that in a case like this, where you go through the initial steps, well, yes, maybe initially you look at the drug guideline, but you go to the career offender range. And so, in other words, the sentencing range here that was used was the career offender range. And one thing I don't think I clarified very well in my brief was that this was a pre-Booker case. This was a pre-Booker case in which there had been a motion for a departure. The guideline range was 151 to 188. And Mr. Thompson got the very bottom of that range. There was no place to go. The motion for a departure had been denied in this case. So to the extent that the crack cocaine guidelines were considered at the beginning, there was not authority for the district court in this case to actually vary below based on any inequities in the crack cocaine powder disparity. So what you have here is a sentence of 151, which was the lowest sentence authorized by law. And you have to consider the Supreme Court's decision in Dillon. Dillon expressly said you cannot revisit whether, you can't go back. Basically, Booker is not retroactive to cases before it was, before Booker was decided. So you can't go back and say that this district court, if it wanted to, would have varied and used 3582 as a means to avoid that analysis. So I hope I answered your question, Judge Tashima. But basically what I'm saying is that even taking what Justice Sotomayor said in Freeman, that the foundation of the sentence has to be changed. The foundation of the sentence here was the career offender guideline. The foundation of the sentence was not the crack cocaine guideline. And I want to say something, too. This analysis would apply to every career offender. And it's inconsistent with Congress's enactment of 28 U.S.C. 994U, which provides that the commission is entitled to control the circumstances under which amendments are enacted, the circumstances under which the amount and any reduction to the guidelines would occur. There has been no amendment to the career offender guidelines in this. There just haven't been. And while Ms. Freeland noted that at the time Mr. Thompson was sentenced, there were very many departures under shoot. That was allowed at the time. That's since not the case anymore, but at the time there were. Mr. Thompson was not one of the defendants where the court looked at his sentence and said, I think you fall outside the range of what a career offender is. I think you are not properly designated a career offender. The district court considered Mr. Thompson's background and found he was properly designated to be a career offender. And accordingly, he was sentenced that way. Are there any further questions? Thank you. Thank you. Ms. Freeland.  A couple of points. Ms. Haywood said that Mateo specifically held that career offenders can take advantage of the crack guideline. That is part of what Mateo said, but it reached that conclusion, relying on a flawed definition and interpretation of the statutory phrase based on that. The Freeman decision did not implicitly overrule the Freeman formulation and interpretation of that very same statutory phrase is different from the one given by this court in Mateo. As I said, in Mateo, the court reached the conclusion that if the guideline does not have the effect of lowering your sentence, it's not based on and that is simply cannot be reconciled with the court's interpretation of that statutory phrase in Freeman. It is true that Justice Sotomayor did not endorse a portion of the plurality's opinion that talked about whether the amended guideline in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement. But elsewhere in her opinion, she and the plurality both used the words foundation and basis. The plurality used the word starting point. And even in her saying that she could not endorse that one portion, she made it abundantly clear that she could not do it in the C plea context. She said, in the absence of any indication from the statutory text or legislative history that 3582C2 was meant to fundamentally alter the way in which Rules 11C1C operates, I cannot endorse this portion of the plurality's decision. Her own language ties it specifically to the C context. Ms. Haywood agreed, conceded I would say, that there are two parts to the eligibility test that flow from Freeman. This court in Mateo did not recognize that there were two conditions and despite Ms. Haywood's protestations, I don't see any way when you read the language from Mateo that I just read back to you to say that this was not a conflation of the two standards. I do want to talk a minute about the amended guideline range. Ms. Haywood in her brief and here today is relying on the 2011 version of the guidelines and the amendments to 1B1.10 that specifically define amended guideline range. Amended guideline range was not defined in the 2002 version of the guidelines upon which Mr. Thompson's sentence was based. And under this court's decision in United States versus Fleming, the court is to look to the definition in the guidelines that were applicable at the time the defendant was sentenced. In Fleming, the court looked to the 2001 guidelines specifically to determine a definition of applicable guideline range, the very term that we're talking about here. The term was not defined in the 2002 guidelines. At the time, Dillon versus United States was not decided in 2010. And in 2002, the policy statements of the commission, even 1B1.10, were not given binding effect. That was a new rule in Dillon versus United States. All right, thank you. And, you know, I would just end by saying that, you know, the issue in this case, the most pertinent issue in this case for the court is whether or not Mateo requires reconsideration under Freeman. And I hope that I've been able to persuade you today that the decision in Mateo, its definition of based on is simply in conflict with the definition later given to it by the Supreme Court. And for that reason alone, reconsideration of Mateo and its definition of that statutory language is required. All right, thank you very much. And thank both of you. Thank you, Your Honor. Okay, thank you. And thank both counsel. The case was excellently argued and briefed. And we'll take it under review.